**UNITED STATES of America, Plaintiff,**

v.

**PRUDENTIAL–GRACE LINES, INC., formerly known as Prudential Lines, Inc., Defendant.**

**No. 71 Civ. 840.**

United States District Court, S. D. New York.

May 6, 1974.

Paul J. Curran, U. S. Atty., for plaintiff, by Gilbert S. Fleischer, Janis G. Schulmeisters, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for defendant, by Elliott B. Nixon, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This case was submitted to the Court on a Stipulation of Facts. That Stipulation is adopted by the Court as Findings of Fact as required by Rule 52 of the Federal Rules of Civil Procedure although reference to all of such facts is not specifically made in this opinion.

The plaintiff, United States of America, brought this action to recover damages for the alleged breach by defendant, Prudential-Grace Lines, Inc. (hereinafter "Prudential") of an agreement contained in certain "Voluntary Agency and Carrier Certificates". These Certificates were executed by defendant and submitted to plaintiff in order to obtain payment from plaintiff of ocean freight

charges relating to six separate shipments of relief cargoes shipped on defendant's vessels during 1965 from U. S. Atlantic ports to the Turkish Black Sea ports of Samsun and Trabzon.

The cargoes in question were shipped by the "Cooperative for American Relief Everywhere" (CARE) under an arrangement with the Agency for International Development (AID), an unincorporated agency of the United States under Executive Order 10973 (26 F.R. 10469, November 4, 1961), acting pursuant to the Foreign Assistance Act of 1961 [22 U.S.Code § 2151 et seq.] and to AID's own regulations [22 C.F.R. §§ 201.01–202.8]. These regulations authorized AID not only to finance the purchase of relief commodities, but also to pay the costs of transporting them to foreign countries. At all relevant times, 22 C.F.R. 202.3(a) provided:

"(a) *Ocean freight.* The amount of ocean freight charges reimbursable to an agency is limited to the actual cost of transportation of the supplies from end of ship's tackle at the United States port of loading to end of ship's tackle at port of discharge at a rate not exceeding the prevailing rate, if any, for similar freight services, or the rate paid to the supplier of ocean transportation for similar services by other customers similarly situated, as attested to by the supplier in Block 13 of Form AID 10–165, entitled 'Voluntary Agency and Carrier Certificate'."

In connection with each shipment defendant executed and submitted a Voluntary Agency and Carrier Certificate which provides:

"13. Certificate of Ocean Freight Supplier. (1) The undersigned hereby certifies to the Agency for International Development (A.I.D.) under penalties provided by law that (i) he is entitled under the contract of carriage to the sum charged to the shipper-voluntary relief agency and (ii) the sum charged to the shipper-volun-

tary relief agency does not exceed the prevailing rate, if any, for similar services or the rate paid to the undersigned for similar services by other customers similarly situated."

At all relevant times, defendant Prudential was a common carrier of goods by water in international commerce. Defendant was a member of the North Atlantic Mediterranean Freight Conference, operating under Agreement No. 9548, as amended, approved by the Federal Maritime Commission under Section 15 of the Shipping Act, 1916 [46 U.S. Code § 814]. This Agreement authorized the Conference's member lines to agree upon a tariff of ocean freight rates and charges covering the transportation of goods, *inter alia,* between U. S. North Atlantic ports and ports in Turkey. This tariff was duly filed with the Federal Maritime Commission pursuant to Section 18(b)(1) of the Shipping Act [46 U.S.Code § 817(b)].

For each shipment involved in this case, defendant issued a through bill of lading assuming common-carrier liability for the entire movement from the United States loading port to the Turkish Black Sea destination port. In each instance the ocean freight correctly calculated in accordance with the provisions of the Conference Tariff was shown in two parts on the bill of lading. The two components were:

(a) A specific commodity rate, based upon the particular type of cargo, which covered ocean transportation from the U. S. port of loading to the "base port" of Istanbul, Turkey,

-*plus*-

(b) an "Arbitrary" charge or "outport differential" rate covering transportation from Istanbul to the Turkish Black Sea port of discharge. This differential rate was a flat dollar amount applicable to all types of commodities, computed on the basis of a weight

ton (2,240 lbs) or a measurement ton (40 cubic feet) of the cargo, whichever would produce the greater revenue to the carrier.

Each of the six shipments was transported on vessels operated by defendant from the respective U. S. port of loading to Istanbul, Turkey. Since defendant's vessels did not call at the Turkish Black Sea ports of Samsun and Trabzon, defendant arranged for the onward transportation from Istanbul to destination to be performed on vessels of the Turkish National Maritime Line (TNML).

In each instance a TNML bill of lading was issued, showing defendant's Istanbul agent as shipper. Defendant paid freight to TNML for the onward movement from Istanbul in accordance with the published TNML Tariff and, in addition, incurred various other expenses relating to the transshipment such as warehousing, transfer charges, insurance, etc. The total of the freight paid to TNML plus these other expenses incurred by defendant was less in each instance than the amount of the "outport differential" included in the ocean freight paid by plaintiff to defendant. The differences with respect to all six shipments involved in this action were $11,666.10 which is the amount now in controversy.

CARE, as shipper, knew or should have known that the six shipments could have been consigned to Istanbul at the "base port" rate in the Conference Tariff where CARE could have taken delivery of the goods and made its own arrangements with TNML or any other carrier for on-carriage to destination.

The defendant is (as it was in 1965) prohibited by 46 U.S.Code § 817(b)(3) from charging less than the tariffs on file with the Federal Maritime Commission or of giving any rebate or refund (except under certain conditions not applicable here).

The rates charged for the transportation of the six shipments involved in this action would have been charged by defendant to any other shipper of the same commodity to the same destinations.

This case is practically identical to the case of United States v. Lykes Brothers Steamship Co., Inc., 353 F.Supp. 1151 (E.D.La.1973).[1] Not only was the same clause at issue in the *Lykes* case but even the "outports" which were the destination of the relief shipments were the same as those here. The only distinction argued by the government is that possibly the vessels owned by *Lykes* could have gone to the outports. That is clearly a distinction without a difference. The bare assertion by the government that the decision in the *Lykes Brothers* case "is incorrect" is totally unpersuasive. But even if I did not believe that the decision in the *Lykes Brothers* case is substantial precedent, I would come to the same result.[2]

The government's whole argument revolves around the phrase in the certificates ". . . the prevailing rate, if any, for similar services . . ." The service provided by the defendant here was transshipment of the cargoes from Atlantic ports in the United States to the Turkish ports of destination. Any carrier in the North Atlantic Mediterranean Freight Conference would have charged an identical amount for the shipments. The attempt by the government to break up the tariff into two portions—one for services to Istanbul—and the other for services from Istanbul to the outports must fail. The government knew or should have known of the Turkish rates. Arrangements could have been made to have CARE accept

1. I am informed that the government's appeal from this case was voluntarily dismissed.

2. I am not setting forth all of the reasoning of the *Lykes Brothers* case, which reasoning should be considered as incorporated herein by reference.

922

delivery of the cargoes at Istanbul and thus taken advantage of the lower rate. Of course CARE would have then had to pay for the warehousing, transfer insurance, etc. which was otherwise included in the defendant's through bill of lading, and which the government now seeks to ignore.

I find no merit in the government's case. Judgment will enter dismissing the complaint.

So ordered.